# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00026-COA

BILLIE SALVADOR BRAZIEL A/K/A BILLIE          APPELLANT
SALVADORE BRAZIEL A/K/A BILLY
SALVADOR BRAZIEL A/K/A BILLIE
SALVADORA BRAZIEL A/K/A BILLIE
BRAZIEL A/K/A BILLIE S. BRAZIEL A/K/A
BILLIE SALVA BRAZIEL

v.

STATE OF MISSISSIPPI          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2014 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILLIE SALVADOR BRAZIEL (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POST-CONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 02/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1. Billie Salvador Braziel appeals the Harrison County Circuit Court's denial of his motion for post-conviction relief ("PCR"). Finding no error, we affirm.

### FACTS

¶2. In 2009, Braziel was indicted in the Harrison County Circuit Court for possession of cocaine. He later pled guilty, and the court sentenced him to sixteen years in the custody of

the Mississippi Department of Corrections, with thirteen years suspended and three years to serve followed by an additional five years of post-release supervision (PRS).[1] The sentencing order set out the following conditions of Braziel's PRS:

Defendant shall:

(a)     Hereafter commit no offense against the laws of this or any state of the United States, or of the United States;

(b)     Avoid injurious or vicious habits;

(c)     Avoid persons or places of disreputable or harmful character;

. . . .

(k)     Pay to the Mississippi Department of Corrections the sum of $55.00 per month by certified check or money order until discharged from supervision, per Miss. Code Ann. § 47-7-49;

. . . .

(o)     Pay all court costs, [a fine, and restitution] . . . . Payments in the amount of $50.00 are to begin on or before sixty (60) days after release from incarceration and shall continue in the amount of $50.00 every thirty (30) days thereafter until all amounts are paid in full.

¶3.     Braziel was placed on PRS in January 2012. On March 21, 2013, he was arrested for possession of a controlled substance with the intent to distribute it. He was arrested with a neighbor, Thomas Buckley, who was also a convicted felon on PRS. The day after his arrest, Braziel tested positive for cocaine, opiates, and marijuana.

¶4.     On April 22, 2013, the State petitioned to revoke Braziel's PRS. The petition alleged that Braziel had violated all five of the above-quoted provisions: he had been arrested on the

---

[1] Braziel also has prior convictions for rape and aggravated assault. *See Braziel v. Bailey*, 835 So. 2d 962, 963 (¶1) (Miss. Ct. App. 2003).

charge of possession with intent; he failed a drug test; he had associated with Buckley; he was $825.00 in arrears on his supervision fees; and he owed $3,472.50 in court costs, a fine, and restitution.

¶5. Braziel waived his right to a preliminary revocation hearing. A final revocation hearing was held on May 20, 2013. At the hearing, Investigator Jason Edmonds, a narcotics investigator with the Pass Christian Police Department and a special agent for the Mississippi Bureau of Narcotics, testified for the State. Edmonds testified that his office, working with a confidential informant, arranged for a cocaine buy to take place at an address in Gulfport. They believed that Braziel's brother would deliver the cocaine at the buy. During a monitored telephone call, the informant was told to drive to the address and wait for Braziel's brother to walk out to the street and deliver the cocaine. On the day of the buy, two law enforcement officers established surveillance near the location. The officers saw Braziel, Buckley, and an unidentified man exit a grey Chevrolet Caprice that was parked in a nearby driveway. The three then walked over to the informant's car, where the buy was to take place, at which point the officers "conducted a takedown of Braziel and Buckley." The unidentified man fled and was not apprehended.

¶6. The officers searched Braziel and found a bag of marijuana in his jacket pocket. They also searched the vehicle that Braziel and Buckley had exited and found marijuana and 12.1 grams of cocaine. The drugs were found in the center compartment of the vehicle next to a prescription pill bottle with Braziel's name on it. In the vehicle they also found a glass bottle containing codeine and a metal spoon and digital scales with cocaine residue.

3

¶7.     Braziel was taken into custody and, after being Mirandized, gave a statement. Braziel claimed that he stopped at either Buckley's car or the car under surveillance only to ask for a dog leash for a dog that had gotten loose.[2] On appeal, he says that the dog was Buckley's. He denied that he had ever been in Buckley's car, although officers watched him exit it and found his pill bottle in it. He admitted that the pill bottle was his—a prescription for the flu—but he had no explanation as to why it was in Buckley's car. Braziel was charged with possession of a controlled substance (cocaine) with intent. At the time of his revocation hearing, the charge had not yet been presented to a grand jury.

¶8.     At the hearing, Braziel admitted that he had failed to pay the amounts charged in the State's petition to revoke his PRS. He also admitted that the marijuana found in his jacket pocket was his. In addition, he did not dispute that he had tested positive for cocaine, opiates, and marijuana. After hearing testimony from Edmonds, Braziel's probation officer, and Braziel, the court found that Braziel had violated conditions (a), (b), (c), (k), and (o) of his probation by a preponderance of the evidence. With respect to condition (a), the court found "that a crime has been committed and it is more than likely that [Braziel] in fact committed that crime." Based on these findings, the court revoked Braziel's probation and sentenced him to his original term of sixteen years, less the part he had served previously.

¶9.     In March 2014, the grand jury returned a "no true bill," declining to indict Braziel on the charge of possession with intent.

---

[2] Edmonds testified that no dog without a leash was observed at the scene.

4

¶10. In October 2014, Braziel filed a PCR motion.[3] In his motion, Braziel argued that his PRS should not have been revoked based on the no true bill. He also argued that he was not "hanging out" with Buckley, reiterating his claim that he was never in Buckley's car. Finally, he argued that his PRS should not have been revoked based on a failed drug test because he sought help for substance abuse and his probation officer was in the process of placing him in treatment.

¶11. On December 1, 2014, the circuit court denied Braziel's PCR motion. The court rejected Braziel's argument that the grand jury's no true bill vitiated the prior revocation order. Citing to *Fairley v. State*, 138 So. 3d 280, 282 (¶4) (Miss. Ct. App. 2014), the court reasoned that at the revocation hearing the State was not required to prove that Braziel committed a crime—only that "it was more likely than not" that Braziel had violated a condition of his PRS. The court also found that Braziel's claim that he did not associate with Buckley was "meritless" given the evidence presented at the hearing. Finally, the court found that Braziel violated the terms of his PRS by using drugs, as evidenced by the failed drug test, notwithstanding his professed desire to seek treatment for substance abuse. Thereafter, Braziel appealed.

**DISCUSSION**

¶12. "On review of a trial court's rulings relating to a post-conviction motion, we review findings of fact under the clearly erroneous standard and review conclusions of law de novo." *Jackson v. State*, 163 So. 3d 317, 320 (¶9) (Miss. Ct. App. 2015) (citing *Purnell v. State*, 126

---

[3] *See* Miss. Code Ann. § 99-39-5(1)(h) (Rev. 2015) (a claim that a person's probation was unlawfully revoked may be asserted in a PCR motion).

So. 3d 949, 951 (¶4) (Miss. Ct. App. 2013)). Braziel's three arguments on appeal track the three claims he raised in the circuit court. We address these three issues in turn.

¶13. Braziel first argues that there was insufficient evidence to show that he committed a crime given the grand jury's no true bill. Braziel cites to *Brown v. State*, 864 So. 2d 1058 (Miss. Ct. App. 2004), which held that the "mere arrest of a probationer is not a violation of probation"; rather, where the State seeks to revoke probation based on the commission of a crime, it must prove "that a crime has been committed and that it is more likely than not that the probationer committed the offense." *Id.* at 1060 (¶9). There, we held that the trial court committed plain error where the fact of arrest was "the *sole foundation* for the revocation of . . . probation." *Id.* (emphasis added).

¶14. In this case, the evidence at Braziel's revocation hearing consisted of not just the fact of his arrest but also testimony of one of the arresting officers, Braziel's admission that he possessed marijuana, his failed drug test, and his admitted failure to pay court costs, a fine, restitution, and monitoring fees. While there may be something to Braziel's argument that a no true bill is inconsistent with revocation of his PRS under condition (a), the State was not required to prove that Braziel committed a crime but only that he "'more likely than not' violated the terms of probation." *Fairley*, 138 So. 3d at 282 (¶4) (quoting *Younger v. State*, 749 So. 2d 219, 222 (¶12) (Miss. Ct. App. 1999)). There remains ample evidence that Braziel violated conditions (b) and (c) of his PRS. That is, there is ample evidence that he used drugs and that he associated with Buckley.[4] Accordingly, the circuit court correctly

---

[4] At his revocation hearing, Braziel did not expressly claim that he was unable to pay his court costs, fines, and monitoring fees, but he did assert that he had been unable to find

rejected Braziel's argument that there was insufficient evidence to revoke his probation.[5]

¶15. Braziel next argues that he did not violate condition (b) of his PRS, which required him to "[a]void persons . . . of disreputable or harmful character." Braziel does not dispute that his neighbor, Buckley, was such a person. Rather, he argues that he was not "hanging out" with Buckley; he insists that he was never in Buckley's car and that he and Buckley just happened to be chasing the same dog at the time of his arrest. However, as recounted above, law enforcement observed Braziel and Buckley exiting the same car and found Braziel's pill bottle in the car. There was sufficient evidence to find that Braziel more likely than not violated this condition, his own protestations to the contrary notwithstanding. This issue is without merit.

¶16. Finally, Braziel argues that his PRS should not have been revoked based on his use of cocaine, opiates, and marijuana because "at [his] revocation hearing [his] supervising

---

a job. In the final sentence of his PCR motion, Braziel asserted that his inability to find employment was the reason for his inability to pay. The issue is not mentioned in his brief on appeal. Although Braziel has never properly raised the issue, we need not rely on his failure to pay as a basis for affirming the denial of his PCR motion, as his continued drug use and association with Buckley were "independent and adequate [grounds] on which probation was revoked." *Mayfield v. State*, 822 So. 2d 332, 336 (¶16) (Miss. Ct. App. 2002) (finding that the "failure to inquire into ability to pay . . . was at most harmless error" since the "primary reason" the probationer's probation was revoked "appear[ed] to be that he tested positive for cocaine"); *accord Silliman v. State*, 8 So. 3d 256, 258 (¶¶10-11) (Miss. Ct. App. 2009).

[5] Braziel also complains that his revocation was based in part on hearsay testimony from Edmonds. However, "the Mississippi Rules of Evidence do not apply to proceedings 'granting or revoking probation.' 'Therefore, the rule barring hearsay does not apply, and hearsay evidence is properly admittable in such hearings.'" *Forshee v. State*, 853 So. 2d 136, 140 (¶18) (Miss Ct. App. 2003) (quoting *Younger*, 749 So. 2d at 221 (¶9)). Moreover, Braziel did not object to the testimony. This issue is without merit.

7

[probation] officer['s] . . . recommendation was that [he] be placed in [drug treatment,] not prison." In fact, however, his probation officer's recommendation was that he be placed in drug treatment "*along with whatever sentence [the court imposed]*." (Emphasis added). Moreover, Braziel cites no authority for the notion that PRS should not be revoked simply because the probationer professes a desire to enter substance abuse treatment. There is clear evidence that Braziel violated this condition of his probation. This issue is also without merit.

**CONCLUSION**

¶17. There was ample evidence to support the trial court's findings that Braziel violated multiple conditions of his PRS, including but not limited to clear and undisputed evidence that he used cocaine, opiates, and marijuana while on PRS. This evidence was sufficient to support revocation of Braziel's probation even though the grand jury ultimately declined to indict him for possession with the intent to distribute cocaine. Accordingly, the circuit court correctly denied Braziel's PCR motion, and we affirm.

¶18. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND JAMES, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**